**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0231n.06
Filed: March 26, 2009

**No. 07-2446**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,  )
)
    Plaintiff-Appellee,  )  ON APPEAL FROM THE
)  UNITED STATES DISTRICT
    v.  )  COURT FOR THE EASTERN
)  DISTRICT OF MICHIGAN
JOHN ROOSEVELT MILLER,  )
)
    Defendant-Appellant.  )
)

BEFORE: McKEAGUE and GRIFFIN, Circuit Judges; and WEBER, District Judge.[*]

GRIFFIN, Circuit Judge.

Defendant John Roosevelt Miller appeals his convictions, following a jury trial, for

possession of cocaine base and marijuana with intent to distribute in violation of 21 U.S.C. §

841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime, contrary to 18

U.S.C. § 924(c)(1)(A). On appeal, Miller alleges that certain errors occurred during trial that warrant

reversal of his convictions. We disagree and, for the following reasons, affirm.

I.

Miller's convictions stem from events that occurred on the afternoon of May 9, 2006, when

Detroit Police officers responded to a complaint that narcotics were being sold at a vacant residence

---

[*]The Honorable Herman J. Weber, Senior United States District Judge for the Southern
District of Ohio, sitting by designation.

on Lindsay Street. The officers, wearing t-shirts with "Police" written across the front and back, arrived in an unmarked van. Upon seeing the van, Miller and two other men fled in different directions.[1] A foot chase through the neighborhood ensued, during which one of the officers used a hand-held radio to call out directions to other officers as he pursued Miller. The officer testified that he saw Miller drop a firearm and contraband during his flight and notified the other officers as to the location of the items. The chase culminated when Miller entered, without permission, the home of local resident Perry Flowers. Despite Miller's attempt to block the side door, the officer forced it open and arrested Miller. Flowers, who was taking a nap, was awakened by the commotion and witnessed Miller's arrest. Officers recovered a loaded handgun and drugs – individually packaged baggies of marijuana and cocaine – allegedly discarded by Miller during the chase.

Miller was subsequently indicted on two counts of drug possession with intent to distribute, 21 U.S.C. § 841(a)(1), and one count of possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A). He pleaded not guilty to the charges, and the case proceeded to trial.

At trial, the government called numerous witnesses, including the investigating officers and Perry Flowers. Officer Velma Tutt, the head of the latent print laboratory of the Detroit Police Department, testified regarding the results of the fingerprint examination on the weapon and the contraband recovered during the chase. Defense counsel objected unsuccessfully to her testimony, arguing that she was not a qualified expert and did not actually perform the fingerprint analysis.

---

[1]The two other individuals were apprehended and issued citations for loitering.

Officer Tutt testified that no identifiable latent prints from defendant or anyone else were found on either the firearm or the contraband.

Miller took the stand in his own defense. He claimed that because he had been the victim of a drive-by shooting in 2004, he was "jumpy" and thus fled at the mere sight of the unmarked van's approach. He denied dropping a gun or drugs during his flight and testified that he never heard anyone yell "Stop[,] Police" as he ran. According to Miller, he went to the side door of Flowers' house and knocked to gain entry, but the police followed him in and arrested him.

Despite his professed innocence, the jury found Miller guilty on all counts. This appeal followed.

II.

Miller first contends that the district court abused its discretion in denying his motion for a mistrial in the wake of an allegedly improper remark by the government in its opening statement to the jury. In relating the facts of the chase leading to Miller's arrest, the prosecutor stated:

> [T]he defendant was cuffed inside this kitchen right before Mr. Flowers, who will testify in this case.

> Ladies and gentlemen, it's one thing to talk to law enforcement officers in the safety and comfort of your home and tell them how this person, who lives so close to you, had no right to enter your home. Yet quite terrifying and intimidating to come to court and say it in front of whoever may be the friends or cronies of this person, all the while knowing that you still have to return and live –

Defense counsel objected, and the district judge admonished the prosecutor to "stay with the facts." The prosecutor responded, "Will do. You're going to hear from Mr. Flowers who's going

to tell you that." Defense counsel objected again, and the prosecutor thereafter continued with his opening statement, with no further comment on this point.

As a result of this exchange, defense counsel later moved for a mistrial, arguing that the prosecutor improperly suggested, without basis, that if Flowers testified he would face potential retaliation from Miller's friends in the neighborhood. In response, the prosecutor maintained that behind the scenes, Flowers was hesitant to testify and was "trying to back away from some of the things that he said . . . ." The court denied the motion for a mistrial, stating:

> We have no indication that he's changing his testimony. However, while I don't think that necessarily should have been mentioned because I don't think that whether or not he's reluctant, whether or not he's fearful to testify, I'm not sure how that has any relevance to the case. In some cases, it can be very prejudicial.
>
> However, I did not hear [the prosecutor] indicate that any fear, on the witness's part if, in fact, there is one, was caused by or resulted as a fear of the defendant.
>
> So, I'm going to deny the motion for a mistrial based on the opening statement.
>
> And I will caution [the prosecutor] to stay away from that area. And if you get in that area, we're going to have a side bar and I want to know exactly why you think you have a right to go into some fear on the part of the witness[.]

During his testimony on the next day of the trial, Flowers gave no indication that he was afraid, and the issue of retaliation was never broached.

We review the district court's denial of a motion for a mistrial based on prosecutorial misconduct for an abuse of discretion. *United States v. Hargrave*, 416 F.3d 486, 491 (6th Cir. 2005) (citing *United States v. Yang*, 281 F.3d 534, 549 (6th Cir. 2002)). We apply a two-step analysis to determine whether prosecutorial misconduct warrants a mistrial:

> First we determine whether a prosecutor's conduct and remarks were improper, and then we determine whether the impropriety amounts to reversible error. As to the second part of the test, we consider whether the conduct and remarks tended to mislead the jury or to prejudice the accused; whether they were isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the evidence against the accused.

*United States v. Jackson*, 473 F.3d 660, 670 (6th Cir. 2007) (quoting *United States v. Collins*, 78 F.3d 1021, 1039 (6th Cir. 1996)).

Improper remarks that are flagrant amount to *per se* reversible error. *Hargrave*, 416 F.3d at 493. If a remark is not flagrant, it may nevertheless warrant reversal in cases where the proof against the defendant was not overwhelming, opposing counsel objected to the conduct, and the district court failed to give a curative instruction. *Id.* However, "'a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial.'" *Jackson*, 473 F.3d at 670-71 (quoting *Collins*, 778 F.3d at 1040). "[T]his Court has declined to find prosecutorial misconduct where objectionable remarks were isolated and did not reoccur." *United States v. Layne*, 192 F.3d 556, 580 (6th Cir. 1999) (citing *Lent v. Wills*, 861 F.2d 972, 975 (6th Cir. 1988)).

We conclude in the present case that the prosecutor's insinuation of possible retaliation against a witness, while improper, was not flagrant or tantamount to reversible error. The isolated remark was promptly addressed by the district court upon defense counsel's objection and further discussion of the issue was foreclosed by the court's rulings on the objection and subsequent motion for a mistrial. The prosecutor heeded the court's warning and his concern that Flowers might change

his testimony never materialized. Consequently, the subject of retaliation was never mentioned again. As the district court noted, the comment did not suggest that the witness's fear was attributable to Miller.

Moreover, the improper comment did not unfairly taint the trial because the case against Miller was not, as he claims, based tenuously on circumstantial evidence. The investigating officers, a civilian observer who accompanied the police, and Perry Flowers all gave consistent eyewitness accounts of the chase and arrest, there was no question of misidentification, and the jettisoned contraband was found along Miller's route of flight in the location where one of the officers saw him drop the items. No other suspects were near this particular drop site at that time. Under these circumstances, the district court did not abuse its discretion in denying his motion for a mistrial.

III.

Miller next contends that he was denied his rights of confrontation and cross-examination because the district court did not require the government to call as a witness Officer Mary Gross, the fingerprint examiner who conducted the fingerprint analysis on the firearm and drug contraband. Instead, over defense counsel's objection, the court allowed Officer Tutt, head of the Detroit Police Department latent fingerprint laboratory and the custodian of the records at the lab, to testify concerning the fingerprint analysis. All reports generated by the department's fingerprint examiners, including the report at issue prepared by Officer Gross, are kept on file in Tutt's unit and under her supervision.

Generally, we review a district court's evidentiary decisions for an abuse of discretion. *United States v. Mayberry*, 540 F.3d 506, 515 (6th Cir. 2008). However, when a defendant alleges that the admission of certain evidence violates the Confrontation Clause, we review the claim de novo. *Id*.

Here, upon defense counsel's request, Officer Tutt, a twenty-year veteran of the department's "evidence tech unit," detailed her extensive professional training and experience as a crime lab technician and fingerprint analyst. Based on her qualifications, the district court overruled defense counsel's objection that Officer Tutt was not a qualified expert in latent fingerprint analysis and allowed her to give expert testimony in this area.

Miller's counsel also objected to Officer Tutt's testimony on the ground that she did not perform the fingerprint analysis and argued that the prosecution instead should call Officer Gross, who was on the government's witness list. At this juncture in the proceedings, the prosecutor moved to admit the fingerprint analysis through Officer Tutt as the custodian of business records pursuant to the hearsay exception set forth in Federal Rule of Evidence 803(6).[2] The district court took the matter under advisement and did not admit the report on direct examination. The prosecutor thereafter asked no further questions of Officer Tutt about the substance of the fingerprint analysis. Consequently, when the defense began its cross-examination of Officer Tutt, the fingerprint report was not in evidence and no testimony had been proffered about its contents.

---

[2]Business records are considered non-testimonial for purposes of the Confrontation Clause. *United States v. Vasilakos*, 508 F.3d 401, 411 (6th Cir. 2007) (citing *Crawford v. Washington*, 541 U.S. 36, 56 (2004)).

It was defense counsel who asked Officer Tutt "the most important question of the day" – whether the firearm and contraband yielded fingerprints. Officer Tutt responded that the fingerprint analysis was "[n]egative," meaning that there were no identifiable prints on the firearm or drug contraband. Later, on redirect examination, Officer Tutt reiterated that the "negative" findings on the report meant that no fingerprints from anyone, including Miller, were found on the firearm, bullets, or drugs. After Officer Tutt completed her testimony, the district court admitted the fingerprint report, noting that Officer Tutt had already testified as to its contents.

In light of the fact that it was defense counsel who, on cross-examination, first asked Tutt about the out-of-court statements contained in the analysis, Miller's claim that he was denied his right of confrontation fails. *See United States v. Cromer*, 389 F.3d 662, 678 n.11 (6th Cir. 2004) ("We need not devote much attention to the question of whether the Confrontation Clause was violated by any of the evidence admitted during [] cross-examination since 'a party may not complain on appeal of errors that he himself invited or provoked.'") (quoting *Harvis v. Roadway Express, Inc.*, 923 F.2d 59, 60 (6th Cir. 1991)). Moreover, because the out-of-court statements were offered by, not against, the accused, the Confrontation Clause has no application. *See Cromer*, 389 F.3d at 671 (noting that the Confrontation Clause, as defined in *Crawford*, applies only to "testimonial, out-of-court statements offered *against* the accused to establish the truth of the matter asserted. . . .") (emphasis added).[3]

---

[3]The issue of whether a state forensic analyst's laboratory report prepared for use in a criminal investigation is "testimonial" evidence subject to the demands of the Confrontation Clause is currently pending before the Supreme Court in *Com. v. Melendez-Diaz*, 870 N.E.2d 676 (Mass.

In any event, Miller has shown no prejudice resulting from the fact that Officer Gross did not testify. First, the fingerprint results, as testified to by Officer Tutt, were favorable to his case – there were no prints connecting Miller to the firearm or contraband. Second, Miller's assertion that he was deprived the opportunity to question Officer Gross about the presence of other individuals' fingerprints on the evidence, presumably to deflect responsibility for possession of the drugs and gun away from himself to another source, is not persuasive given that Officer Tutt was questioned about and addressed this topic. She testified that no prints from *anyone* were found on the items. Thus, Miller's contention that Officer Gross could have offered further information beyond that elicited from Officer Tutt is not supported by the record. The alleged violations of Miller's rights of confrontation and cross-examination are therefore without merit.

IV.

Finally, Miller complains that the district court erred when it referred to Officer Tutt as an "expert witness" in its instructions to the jury. As Miller acknowledges, he did not object to the jury instruction. We therefore review his challenge for plain error. *United States v. Castano*, 543 F.3d 826, 838-39 (6th Cir. 2008).

In his argument, Miller appears to be challenging the district court's underlying decision to admit expert testimony, but he provides no basis for concluding that the district court abused its discretion in allowing Officer Tutt to testify as a qualified expert in the field of latent fingerprint

App. Ct. Jul. 31, 2007) (Table), cert. granted, — U.S. — , 128 S. Ct. 1647 (U.S. Mar. 17, 2008) (No. 07-591).

analysis. *See generally Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 293-94 (6th Cir. 2007) ("We review a district court's decision to admit expert testimony, including its decisions about how to determine reliability and its ultimate conclusion, for abuse of discretion.") (internal quotation marks omitted). Thus, Miller has not shown that the district court's reference to Tutt as "an expert" in its instructions to the jury constitutes plain error.

V.

Accordingly, we affirm Miller's convictions.