NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0288n.06

Case No. 22-3887

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | FILED<br>Jun 20, 2023<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| STEVEN ROSSER, | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

Before: WHITE, THAPAR, and NALBANDIAN, Circuit Judges.

**NALBANDIAN, Circuit Judge.** Steven Rosser, a police officer in Columbus, Ohio, planned to set up a strip-club owner for cocaine possession. The scheme worked. Rosser and a few other cops arrested the owner and searched his vehicle. But Rosser didn't get away with it. Other officers caught Rosser when they discovered inconsistencies in his police report. Along with two other counts, a federal indictment charged Rosser with one count for conspiring to injure the owner's right to be free from unreasonable search and seizure without probable cause. And a jury later found him guilty on that count. Now seeking to reverse his conviction, Rosser alleges three trial errors. Finding no error, we affirm.

## I.

Steven Rosser was a police officer in the Columbus, Ohio Division of Police. Rosser, aka "Officer Party," was a regular patron at the DollHouse—a strip-club on the northeast side of Columbus. (R. 131, Transcript II, 467 (explaining that others knew him as "Officer Party . . .

[b]ecause he was the only cop at the party, at every party"); *see* PSR, 5 ¶ 16.) A couple times a week, often after hours, Rosser made himself at home there—going behind the bar and helping himself to a beer on the house, getting lap dances, and hanging out and doing cocaine in the back office with his friend, manager Nick Jgenti. (R. 131, Transcript II, 271–74; 459–61, 466, 469; 569–70.)

Things went awry when a management transition at the DollHouse left Jgenti at odds with the co-owner of the strip club, Armen Stepanian. Jgenti wanted to stop Stepanian from "tak[ing] away [the] DollHouse." (R. 133, Transcript IV, 1028; *see id.* at 1029–30.) The master plan was to "set [Stepanian] up and get [him] arrested with being caught with cocaine." (*Id.* at 1029.) And "Rosser was going to help." (*Id.*)

One night, Jgenti's girlfriend, who was also in on the scheme, "cut up lines" of "coke on the table" and "did coke" while she and Stepanian were in Jgenti's office. (*Id.* at 1032.) But just as she did so, someone "came knocking on the door in the office." (*Id.*) And like clockwork, "Rosser and a few other cops c[a]me walking in" to arrest Stepanian. (*Id.*) An unidentified person told the officers to look under a food container, where they found two lines of cocaine. The officers then arrested Stepanian and searched him and his vehicle. Everything went according to plan. That is, up until police investigated Rosser's arrest report, which "contain[ed] numerous falsehoods and made no mention of any other witnesses to the events." (PSR, 7–8 ¶ 25.)

A federal grand jury in the Southern District of Ohio returned a three-count indictment against Rosser and a co-defendant. Count two charged Rosser with violating 18 U.S.C. § 241 by conspiring with Jgenti to deprive Stepanian of his Fourth Amendment right to be free from unreasonable searches and seizures without probable cause. For support, the indictment also listed

a series of overt acts related to Stepanian's arrest and the search of him and his vehicle. (R. 5, Indictment, 6 ¶ 13(b)–(c).)

At trial, the government called 24 witnesses, and Rosser declined to call any witnesses or testify. Following the five-day trial, a jury convicted Rosser on count two. The district court sentenced Rosser to 18 months in prison, one year of supervised release, and a $10,000 fine and a $100 special assessment. Rosser timely appealed.

## II.

Rosser challenges his conviction, alleging three trial errors: (1) He was convicted of a charge that was not listed in his indictment; (2) The jury instruction for the conspiracy charge failed to require a finding of an overt act; and (3) The prosecutor made an improper, flagrant statement in closing argument. Because Rosser did not specifically object to these issues below, we review each for plain error. *United States v. Kuehne*, 547 F.3d 667, 682 (6th Cir. 2008) (constructive amendment); *United States v. Newsom*, 452 F.3d 593, 605 (6th Cir. 2006) (jury instruction); *United States v. Acosta*, 924 F.3d 288, 298–99 (6th Cir. 2019) (improper prosecutorial statements). Under that test, we must find an "(1) error, (2) that is plain, and (3) that affects substantial rights." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (cleaned up). And "if all three conditions are met," we may "notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (cleaned up).

## A.

Rosser first argues that the district court committed plain error by constructively amending count two of the indictment. He claims that he was convicted of a different crime (an illegal seizure) from the charge in the indictment (an illegal search). But as we'll explain, no error—let alone a plain one—occurred because Rosser was charged with and convicted of the same crime.

Rosser carries the burden of proving that a "constructive amendment" occurred. *United States v. Mayberry*, 540 F.3d 506, 513 (6th Cir. 2008). "A constructive amendment results when the terms of an indictment are in effect altered" at trial so that a "defendant may have been convicted of an offense other than the one charged in the indictment." *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005) (quoting *United States v. Smith*, 320 F.3d 647, 656 (6th Cir. 2003)). Rosser can meet his burden by "pointing to a combination of evidence *and* jury instructions that effectively alter[ed] the terms of [his] indictment and modifie[d] the essential elements of the charged offense to the extent that [he] may well have been convicted of a crime other than the one set forth in [his] indictment." *United States v. Hynes*, 467 F.3d 951, 962 (6th Cir. 2006) (noting that constructive amendments are "per se prejudicial because they infringe upon the Fifth Amendment's grand jury guarantee" (cleaned up)). And if he can't show that the district court constructively amended his charge, no plain error occurred on this claim. *See United States v. Mize*, 814 F.3d 401, 408–09 (6th Cir. 2016).

Start with Rosser's indictment. Rosser believes that his indictment didn't put him on notice that he and others conspired to injure Stepanian's rights "to be free from unlawful seizure by setting him up on a cocaine possession charge, leading to his false arrest." (Appellant Br. at 28.) Not so. A read of the indictment shows that he *was* on notice.

Count two of the indictment charged that Rosser and his co-conspirators "did knowingly and willfully conspire and agree together and with each other to injure, oppress, threaten, and intimidate a person known to the grand jury ("A.S.") [Armen Stepanian] in the free exercise and enjoyment of . . . the right to be free from unreasonable search *and seizure* without probable cause, in violation of the Fourth Amendment." (R. 5, Indictment, 5 ¶ 12 (emphasis added)); *see* 18 U.S.C. § 241. This language clearly put Rosser on notice that he would be tried for conspiring to

unreasonably search *and* seize. And as if count two's language wasn't clear enough, the indictment's overt act section also listed actions that contributed to an unreasonable seizure. The indictment noted that after Rosser "located suspected cocaine residue," he "*arrested* [Stepanian] for possession of cocaine." (R. 5, Indictment, 6 ¶ 13(b) (emphasis added); *see also id.* at 6 ¶ 13(c) (noting overt acts "before and after [Stepanian] was *arrested*").)

In response, Rosser shifts focus to one sentence in the indictment's list of overt acts. That sentence states that he "and the other officers then *searched* [Stepanian] and his vehicle, without a warrant or consent, *in violation of his civil rights*." (*Id.* at 6 ¶ 13(b) (emphases added).) Rosser argues that the phrase "in violation of his civil rights" only pertains to the illegal search, and no similar phrase is used when the indictment refers to his illegal seizure. (Appellant Br. at 27–28.) So he reasons that the language "clearly narrowed the focus of the Fourth Amendment violation" from "unreasonable search and seizure" to "search" only. (*Id.*)

The way Rosser reads the indictment impermissibly heightens the standard for the sufficiency of an indictment. An indictment is sufficient if it charges the "elements of the offense" and "fairly informs a defendant of the charge." *United States v. Howard*, 947 F.3d 936, 942 (6th Cir. 2020) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). And it can do so by including "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).

Rosser's indictment meets that standard. Count two specified that the conspiracy concerned both an unreasonable search *and seizure*. And the overt acts listed describe the events surrounding Rosser's illegal search and seizure of Stepanian. That information is enough to "apprise [Rosser] with reasonable certainty, of the nature of the accusation against him." *Russell v. United States*, 369 U.S. 749, 765 (1962) (quotation marks omitted) (quoting *United States v.*

*Simmons*, 96 U.S. 360, 362 (1877)). Further, even if the government needed to prove an overt act to convict Rosser, which we reject below, "it is a 'well-established rule . . . that the overt act element of a conspiracy charge may be satisfied by an overt act that is not specified in the indictment, at least so long as there is no prejudice to the defendant.'" *United States v. Rios*, 830 F.3d 403, 427 (6th Cir. 2016) (alteration in original) (quoting *United States v. Salmonese*, 352 F.3d 608, 619 (2d Cir. 2003)). In light of that rule, the one sentence Rosser points to doesn't carry much weight. After all, the government could have relied on an overt act not even alluded to in the indictment. As a result, Rosser has not met his burden of proving a constructive amendment.

**B.**

Rosser next argues that the district court committed plain error by instructing the jury on a civil-rights conspiracy without listing the commission of an overt act as a required element. Because no binding precedent requires an overt act under § 241, no plain error occurred.

On its face, 18 U.S.C. § 241 requires that "two or more persons conspire to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States." 18 U.S.C. § 241. It mentions nothing about an overt act. *Cf. United States v. Shabani*, 513 U.S. 10, 17 (1994) (holding that 21 U.S.C. § 846's statutory language did not "require[] that an overt act be committed to further the conspiracy" and remarking that the Supreme Court has "not inferred such a requirement from congressional silence in other conspiracy statutes").

So at least on its face, it's not clear that § 241 requires an overt act. *See, e.g.*, *United States v. Conatser*, 514 F.3d 508, 519 n.4 (6th Cir. 2008) (collecting cases from other circuits that determine that § 241 does not have an overt-act requirement); *United States v. Colvin*, 353 F.3d 569, 576 (7th Cir. 2003) (holding that "*Shabani* compels a conclusion that an overt act is not

6

required under § 241" because the language "does not specify an overt-act requirement and the Supreme Court has never inferred such a requirement when the statute did not specify one"). Regardless, it's enough on plain-error review to say that neither the Supreme Court nor this Court has decided "whether conspiracy to violate the civil rights of another requires proof of an overt act." *Conatser*, 514 F.3d at 519 n.4. Thus, we find no error because the district court did not "[d]eviat[e] from a legal rule." *United States v. Olano*, 507 U.S. 725, 732–33 (1993); *see also United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015) ("A lack of binding case law that answers the question presented will [] preclude our finding of plain error.").

In response, Rosser asserts that this Court's opinion in *United States v. Brown* determined that a § 241 conviction requires "an overt act [that] was committed in furtherance of the conspiracy." 49 F.3d 1162, 1165 (6th Cir. 1995). True, *Brown* laid out the elements of a § 241 conspiracy charge in passing. *See id.* ("To establish a conspiracy to interfere with civil rights, the United States must prove that the defendant knowingly joined a conspiracy to injure, oppress, threaten or intimidate a victim with the intent to deprive him of a civil right and that an overt act was committed in furtherance of the conspiracy."). But as this Court later explained, *Brown*'s mention of that "overt act" requirement was dicta. *Conatser*, 514 F.3d at 519 n.4. *Brown* wasn't an overt-act case. In *Brown*, the issue was whether under § 241 and 42 U.S.C. § 1982 there is a "right to 'use' property free from racial discrimination." 49 F.3d at 1165–67 (holding that non-owners of property who nevertheless have an interest in using or holding that property have a viable property interest). But *Brown* didn't have the opportunity to analyze the overt-act requirement. That issue wasn't before the Court. So *Brown* does not govern whether a § 241 conspiracy charge requires an overt act.

**C.**

Finally, Rosser challenges a statement that the United States made in its closing argument. After discussing how a witness responded in an interview, the government stated, "I think Allie Mills was giving it to you straight." (R. 134, Transcript V, 1205.) On appeal, Rosser claims that the statement constitutes flagrant misconduct and requires reversal. We review this statement for plain error, and we can only reverse if the statement is so egregious "that the district court erred by failing to rectify that [statement] sua sponte." *United States v. Simmonds*, 62 F.4th 961, 964 (6th Cir. 2023); *see Puckett v. United States*, 556 U.S. 129, 134 (2009).

To begin, we look at whether an error occurred. When reviewing whether statements constitute prosecutorial misconduct, we first determine whether the statements were "improper." *United States v. Francis*, 170 F.3d 546, 549 (6th Cir. 1999). A statement is improper when "a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness." *Id.* at 550.

The statement here was improper because "blunt comments" of personal belief constitute improper vouching. *Id.* Indeed, this Court has long held that personal belief arguments are improper and "unequivocally condemned," "even when . . . based solely on the testimony advanced at trial." *United States v. Bess*, 593 F.2d 749, 756 (6th Cir. 1979). So the statement, "I think Allie Mills was giving it to you straight," does not pass muster. *See Francis*, 170 F.3d at 550 (noting that improper vouching can include statements like, "I think [] [the witness] was candid" and "I think he is honest" (quoting *United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992))).

We next look at whether the error is plain. "An improper statement of personal belief . . . is not per se reversible error." *United States v. Henry*, 545 F.3d 367, 380 (6th Cir. 2008). So we must determine whether the improper statement was flagrant so as to require the district court to intervene sua sponte. *See Simmonds*, 62 F.4th at 964. And this is where Rosser's argument falls apart.

Four factors determine whether an improper statement is flagrant: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong." *United States v. Lawrence*, 735 F.3d 385, 431–32 (6th Cir. 2013) (quoting *United States v. Carson*, 560 F.3d 566, 574 (6th Cir. 2009)). And to warrant reversal, the prosecutor's statements "must have rendered the trial fundamentally unfair," *id.*, thereby necessitating district-court intervention, *Simmonds*, 62 F.4th at 964.

First off, the prosecutor's single statement did not tend to mislead the jury or prejudice the defendant. A court's jury instruction to disregard attorney statements as evidence can "neutralize [a] prosecutor's slight impropriety." *United States v. Martinez*, 981 F.2d 867, 871 (6th Cir. 1992); *see also United States v. Sivils*, 960 F.2d 587, 594 (6th Cir. 1992) ("Where jurors are so instructed, courts presume that the jurors understood and followed the directions given."). And here, the district court instructed the jury, "The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence." (R. 134, Transcript V, 1308.) As a result, "[a]ny possible prejudice that [Rosser] might have suffered was ameliorated by the trial court's instruction to the jury." *Martinez*, 981 F.2d at 871.

Next, even if the prosecutor deliberately made the statement, even Rosser recognizes that "the remark was only made once, so it was isolated." (Appellant Br. at 42); *see United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005) ("They were not accidental, but neither were they extensive."). And we agree. One short sentence made in a closing argument during a trial that occupied five days was isolated.

Lastly, the evidence against Rosser on the conspiracy charge was strong. *See Lawrence*, 735 F.3d at 432. The government presented a variety of evidence revealing Rosser's ongoing relationship and drug use with Jgenti, the friction caused by the management transition at the DollHouse, Jgenti's plan to frame Stepanian with cocaine use, (R. 133, Transcript IV, 1028–30), Stepanian's perspective, and the repeated contacts between Jgenti, Rosser, and another officer just before and following the arrest. And "Rosser's version of events was contradicted by each witness that was present on the night of [] Stepanian's arrest." (PSR, 6 ¶ 21.) In light of the evidence offered against Rosser, he cannot show that the prosecutor's isolated remark affected the jury's guilty verdict. *See United States v. Modena*, 302 F.3d 626, 635–36 (6th Cir. 2002). Flagrancy "is a pretty high standard." *Francis*, 170 F.3d at 552. And Rosser fails to meet it. There was no flagrant statement for the district court to "recognize and rectify." *Simmonds*, 62 F.4th at 967. So there is no plain error here. *See Henry*, 545 F.3d at 380 ("And because the error was not flagrant even under de novo review, the vouching statement is clearly not ground for reversal under the plain-error standard applicable here.").

## III.

For these reasons, we **AFFIRM**.