*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0088P (6th Cir.)
File Name: 04a0088p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

No. 02-5966

PHILLIP CLINE,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 01-00056—Danny C. Reeves, District Judge.

Submitted: October 24, 2003

Decided and Filed: March 26, 2004

Before: KENNEDY and GIBBONS, Circuit Judges;
ALDRICH, District Judge.*

───────────────

## COUNSEL

**ON BRIEF:** Stephen W. Owens, STEPHEN W. OWENS
LAW OFFICE, Pikeville, Kentucky, for Appellant.

───────────────

* The Honorable Ann Aldrich, United States District Judge for the
Northern District of Ohio, sitting by designation.

Charles P. Wisdom, Jr., Kenneth R. Taylor, Marianna Jackson
Clay, ASSISTANT UNITED STATES ATTORNEY,
Lexington, Kentucky, for Appellee.

───────────────

## OPINION

───────────────

ALDRICH, District Judge. This case concerns the
conviction and sentencing of a Kentucky man for carjacking,
possession of firearms while subject to a domestic violence
order, and carrying a firearm during a crime of violence.
Because the district court did not abuse its discretion in any
of the matters raised by the appellant, we AFFIRM its
decision.

### I. Background

Defendant Phillip Cline (hereinafter "Cline") has a long
history of domestic violence. His wife, Jeana Marcum
(hereinafter "Marcum"), has sought protective orders against
him on at least four occasions, and the pair's last attempt at
reconciliation led to the incidents at issue in this case.

In April of 2001, renewed contact between husband and
wife led Marcum to seek an amendment to the domestic
violence order then in place against Cline. That order,
entered December 12, 2000 and scheduled to terminate
December 12, 2003, required Cline to stay at least 500 feet
away from Marcum and members of her family, not to
commit further acts of domestic violence, and not to dispose
of or destroy jointly held property. Pursuant to Marcum's
claim that she and Cline had "worked everything out," the
Martin County District Court amended the prior order,
removing the "stay away" and "no contact" provisions. All
other provisions of the December 2000 order remained in
force.

Relations between Cline and Marcum quickly deteriorated, however, and on April 19, 2001, Marcum sought to reinstate the "no contact" and "stay away" provisions, citing new instances of abuse. This petition was denied when Marcum failed to appear at a hearing on the issue.

It is clear that Cline possessed and used firearms while the December 2000 order remained in effect. At trial, Marcum testified that she purchased guns in the "summertime" of 2001, and that she and Cline used them for deer hunting. Pawn broker Mark Jordan testified that Cline pawned a Norinco SKS on August 7, 2001, and that in July of that year he sold several guns to Marcum in the presence of Cline.

On August 11, 2001, Cline and Marcum sat drinking beer and talking, at the trailer of Okey DeLong in Martin County. Also in attendance were Butch Crum, Regina "Tiny" Newsome, and Newsome's son, Kenny. Luther Smith arrived while Crum and Newsome were away on a beer run.

Inexplicably, the tenor of the conversation between Cline and Smith began to change, from "joking around" and "kidding around," to heated and angry. Cline began to direct his anger toward Marcum, threatening to knock her through a nearby wood shed and the like. Fearing for her safety, Marcum instructed Kenny to survey the proceedings, and to call 911 or the sheriff's office if Cline became violent. Cline commenced hitting Marcum all the same, and so Marcum seized the first available opportunity (when Cline went inside to use the restroom) to plead with Smith: "I told Luther to please help me ... I knew [Cline] was drinking, and I knew he was going to hurt me." J.A. at 173.

Smith took Marcum at her word, and departed with her in his car while Cline was still inside the trailer. Unfortunately, Crum and Newsome soon returned, and offered their vehicle to Cline for use in pursuing his fleeing wife.

The three pursuers caught up with Smith and Marcum "on a nearby road," and mayhem ensued. Cline pummeled Smith[1], leaving him unconscious in the road, and then seized Marcum's car, preventing her from escaping. He beat Marcum in the car, and then sped away, possibly over Smith's supine figure. (Smith died in the road, but not before being struck by at least one other passing car.) Marcum testified that Cline ignored her pleas and protestations, exclaiming "you want Luther that bad, you are going to get him, you are going to watch me run over him." J.A. at 176.

Cline then drove Marcum back to DeLong's trailer. Once inside the trailer, Cline exclaimed: "I've already killed Luther. You've seen too much. Now you are going to die, bitch." J.A. at 177. He continued to beat Marcum severely, cracking three ribs and her skull, inducing swelling in her brain, breaking her tailbone, and inflicting several large bruises. Cline may have succeeded in carrying out his threat to kill his wife, had the police not arrived to arrest him.

On November 15, 2001, a grand jury indicted Cline on charges of carjacking (Count 1), possession of firearms while subject to a domestic violence order (Counts 2 through 5), and using and carrying a firearm during and in relation to a crime of violence (Count 6), in violation of 18 U.S.C. §§ 2119, 922(g)(8)(B), and 924(c), respectively. During pretrial proceedings, Cline moved to dismiss Counts 2-5, arguing that the "dismissal" of the April 2001 domestic violence petition removed any order then in force against him. In response, the government produced an affidavit from the issuing judge, which affirmed that the December 2000 order remained in effect after April 2001. The district court thereafter denied Cline's motion to dismiss, and granted a government motion to bar defense counsel from reasserting

---

[1] Luther had left his car voluntarily, vowing "I'm not afraid of Phillip, and he's never going to hurt you again." J.A. at 175.

this argument at trial. Defense counsel then unsuccessfully moved to sever Counts 1 and 6 from the indictment.

The case proceeded to trial in February of 2002. A jury convicted Cline of Counts 1 through 5, and found him not guilty of Count 6, carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). Over defense counsel's various objections, the district court sentenced Cline to 220 months in prison, three years of supervised release, and a special assessment of $500.

On August 2, 2002, Cline filed a timely notice of appeal.

## II. Discussion

Cline charges that the district court erred in four respects: (1) by accepting a state court judge's affidavit as evidence of the status of a domestic violence order; (2) by granting a motion *in limine* barring the defense from challenging the status of said order at trial; (3) by failing to sever Counts 1 and 6 from the indictment; and (4) in its various enhancements of Cline's sentence. Cline challenges the enhancements of two levels for carjacking, two levels for making a threat of death during a carjacking, and two levels for obstruction of justice. He also alleges that the district court improperly counted past convictions which may have been uncounseled.

### A. The State Judge's Affidavit

Before the district court, Cline argued that he could not be found guilty of possessing firearms while subject to a domestic violence order (DVO), because the last order obtained by his wife had been marked as "dismissed." The government argued that the "dismissed" order (allowing contact with Marcum for purposes of an attempted reconciliation) was merely a modification of an existing and valid DVO, and that its dismissal did nothing to revoke the

prior order. In his affidavit, the Martin County issuing judge supported the government's interpretation.

Cline cites no law in support of his proposition that accepting the affidavit of a state court judge as evidence of the status of a DVO violated his right to confront witnesses against him. Cline cannot challenge the affidavit itself because his counsel failed to properly preserve the issue for appellate review.

Generally, an appellant cannot raise a claim before the appellate court that was not raised below. In *United States v. Bonds*, 12 F.3d 540, 569 (6th Cir. 1993), this Court held that a defendant waives his right to challenge the sufficiency of an affidavit when he fails to raise the challenge at the district court level. *Id.* at 569. Where a defendant does not challenge the evidence before the district court, he must demonstrate that admission of the evidence nonetheless constituted "plain error." *See* FED. R. EVID. 103(a)(1) and (d); FED. R. CRIM. P. 52(b); *United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998).

To establish plain error, Cline must demonstrate that: (1) an error occurred; (2) the error was obvious or clear; (3) the error affected his substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998). An error that does not affect a defendant's substantial rights is harmless. *See* FED. R. CRIM. P. 52(a).

Here, it is clear that Cline's substantial rights were not affected. A defendant's right to confront witnesses at the pre-trial stage is substantially weaker than his right to do so at trial. *United States v. Matlock*, 415 U.S. 164, 173-75 (1974). In ruling on the proper interpretation of the DVO, the district court was entitled to give the evidence presented such weight as its judgment and experience counseled. *See id.* at 175. Again, Cline points to no case in which such conduct was

held to violate a defendant's rights under the confrontation clause.

## B. The Motion *in Limine*

Cline next challenges the district court's grant of the government's motion *in limine*. Cline contends that, because the status of the DVO was an element of the offenses charged in Counts 2 through 5, the district court was required to let the jury determine that status.

This court reviews a district court's decision to exclude evidence pursuant to a motion *in limine* for abuse of discretion. *United States v. Phibbs*, 999 F.2d 1053, 1078 (6th Cir. 1993); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997). A district court abuses its discretion when it relies on clearly erroneous findings of fact, when it improperly applies the law, or when it employs an erroneous legal standard. *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995).

No abuse of discretion occurred. While the United States Supreme Court has consistently reaffirmed its holding that a jury must find a defendant guilty beyond a reasonable doubt of every element of a criminal offense, *see, e.g., United States v. Gaudin*, 515 U.S. 506, 510 (1995), Rule 12(b) of the Federal Rules of Criminal Procedure permits a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." FED. R. CRIM. P. 12(b). As Chief Justice Rehnquist, concurring in *Gaudin,* observed:

mixed questions of law and fact remain the proper domain of the trial court. Preliminary questions in a trial regarding the admissibility of evidence, the competency of witnesses, the voluntariness of confessions, the legality of searches and seizures, and the propriety of venue, may be decided by the trial court.

515 U.S. at 525-26 (citations omitted). *See also United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997)(quoting previous version of FED. R. CRIM. P. 12(b)); *United States v. Haynes*, 143 F.3d 1089, 1090 (7th Cir. 1998) (motion *in limine* may be used to prevent introduction of evidence supporting a defense whose elements cannot be established).

In fact, Cline acknowledged that the DVO issue was an appropriate matter for pretrial resolution. On January 25, 2002, Cline filed a Motion to Dismiss Counts 2-5 of the indictment, arguing that he "was not under a domestic violence order at the time of the incident in question." J.A. at 103. (The government did not file its motion *in limine* until February 1, in conjunction with its reply to Cline's motion to dismiss. J.A. at 105-06.) In denying Cline's motion, the district judge properly ruled on his DVO status as a matter of law. J.A. at 108-116; *cf. Craft*, 105 F.3d at 1126. Cline cannot now complain that the judge was not permitted to do so, merely because he is unsatisfied with the decision.

Determining the legal meaning of the DVO did not require trial of the general issue of guilt on any count and thus did not invade the province of the jury. *Cf. Craft*, 105 F.3d at 1126; *United States v. White Horse*, 807 F.2d 1426, 1430 (8th Cir. 1986). The jury instructions properly set forth each element of 18 U.S.C. §922(g)(8), and the jury was instructed to determine whether the government had proved each element beyond a reasonable doubt. Therefore, no abuse of discretion occurred.

## C. The Unsevered Counts

Cline next claims that the district court erred in declining to sever Counts 1 and 6 (carjacking) from Counts 2-5 (possession of firearms while subject to a DVO), because his possession of the guns was unrelated to the carjacking. The district court determined that all of the charged offenses were "acts or transactions connected together or constituting parts of a common scheme or plan" under the version of Federal

Rule of Criminal Procedure 8(a) then in force.[2] We review the denial of a motion to sever for abuse of discretion. *United States v. Jacobs*, 244 F.3d 503, 506 (6th Cir. 2001).

Cline's brief argues that "[t]here was no evidence that Counts 2, 3, 4 & 5 were part of the same transaction alleged in Counts 1 & 6, nor that they were part of a common scheme." Indeed, the government's argument that every count "involved domestic violence" against the same person, and that each count concerns events from "the summer of 1991 ... in the Eastern District of Kentucky," might seem a difficult fit with the standard set forth in Rule 8(a).

Yet Cline fails to establish (or even to argue) that joinder of the six Counts prejudiced him in any way. This omission is fatal to Cline's position, since Federal Rule of Criminal Procedure 14 requires prejudice for an order of separate trials, and "an appellant must show that the denial of his motion for severance of counts affected his 'substantial rights'." *United States v. Cope*, 312 F.3d 757,781 (6th Cir. 2002) (citing *United States v. Chavis*, 296 F.3d 450, 461 (6th Cir. 2002)).

Additionally, the district court's limiting instructions, which asked the jury to separately consider the evidence for each count and not to decide Cline's guilt or innocence on one count based on its decision on another (with the exception of Count 6), minimized any possible prejudice. *See Jacobs*, 244 F.3d at 507; *Cope*, 312 F.3d at 781.

---

[2] Rule 8(a) has since been amended to allow joinder of two or more offenses where they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." FED. R. CRIM. P. 8(a).

## D. The Sentencing Enhancements

Cline asserts that the district court erred by: (1) applying a two-level enhancement for committing a carjacking under the United States Sentencing Guidleines § 2B3.1(b)(5); (2) counting past convictions which may have been uncounseled; (3) applying a two-level enhancement for obstruction of justice under USSG § 3C1.1; and (4)applying a two-level enhancement for making a threat of death during the carjacking under USSG § 2B3.1(b)(2)(F).

"Legal conclusions regarding [application of the sentencing] guidelines are reviewed *de novo*; however, this circuit gives due deference to the district court's application of the guidelines to the facts pursuant to 18 U.S.C. § 3742(a)." *United States v. Smith*, 320 F.3d 647, 657 (6th Cir. 2003) (citing *Buford v. United States*, 532 U.S. 59 (2001)). Factual findings used to determine a defendant's criminal history category are reviewed for clear error. *United States v. Wilson*, 168 F.3d 916, 922 (6th Cir. 1999).

Three of Cline's four arguments may be disposed of briefly.

### 1. Enhancement for Carjacking

United States Sentencing Guidelines § 2B3.1(b)(5) permits a two-level enhancement "[i]f the offense involved carjacking." U.S. SENTENCING GUIDELINES MANUAL § 2B3.1(b)(5) (2003). Carjacking is defined as "the taking or attempted taking of a motor vehicle from the person or presence of another by force and violence or by intimidation." U.S. SENTENCING GUIDELINES MANUAL § 2B3.1, cmt. n. 1 (2003).

Cline argues that the district court's application of this section constituted impermissible double counting, which occurs if "the same aspect of a defendant's conduct factors into his sentence in two separate ways," and neither Congress nor the Sentencing Commission intended to impose multiple

penalties. *United States v. Farrow*, 198 F.3d 179, 193-94 (6th Cir. 1999).

Cline's only citation in support of this argument is to *Farrow*, in which we determined that it was impermissible double-counting to employ Farrow's act of using his vehicle as a dangerous weapon both to convict him of aggravated assault and to enhance his sentence (for "otherwise using" a dangerous weapon, *i.e.*, the same vehicle). *Id*. at 195. However, Cline fails to note the language in *Farrow* observing that "the Sentencing Guidelines expressly mandate double counting under some circumstances through the cumulative application of sentencing adjustments." *Id.* at 194. For example, "Congress has clearly indicated its intent to punish cumulatively violations of §§ 2119 and 924(c) [the federal carjacking statute and the provision for enhanced punishment for using a dangerous or deadly weapon during a violent crime, respectively]." *United States v. Johnson*, 22 F.3d 106, 108 (6th Cir. 1994) (quoting *United States v. Singleton*, 16 F.3d 1419, 1425 (5th Cir. 1994)), *cited in Farrow*, 198 F.3d at 194.

Given this express mandate, the district court properly imposed the enhancement for carjacking.

### 2. Counting Past Convictions

Cline also argues that the district court erred in computing Cline's criminal history score, by counting past convictions which may have been uncounseled. Cline appears to contend that, in order to legitimately rely on the convictions listed in paragraphs 106, 107, 108, 110, 111, and 113 of the presentence investigation report, the district court was required to find that Cline was represented by counsel, or explicitly waived his right to counsel, in each case. Cline cites *Burgett v. Texas,* 389 U.S. 109 (1967) for the principle that "[p]resuming waiver of counsel from a silent record is impermissible." *Id*. at 114-15.

The United States Supreme Court rejected a similar argument in *Parke v. Raley*, 506 U.S. 20, 31 (1992), remarking that "[a]t the time the prior conviction at issue in *Burgett* was entered, state criminal defendants' federal constitutional right to counsel had not yet been recognized, and so it was reasonable to presume that the defendant had not waived a right he did not possess." *Parke* reaffirmed the application of a presumption of regularity to state court proceedings, even as to the waiver of counsel, and Cline cites no precedent to support his contention that said presumption "does not apply in this matter."

In relying on this presumption to compute Cline's criminal history score, the district court did not err.

### 3. Enhancement for Obstruction of Justice

Cline argues that the district court erred by applying a two-level enhancement for obstruction of justice without first making the necessary findings. Section 3C1.1 of the sentencing guidelines provides for such an enhancement where "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction," and the obstructive conduct related to the offense. U.S. Sentencing Guidelines Manual § 3C1.1; *see also United States v. Dunham*, 295 F.3d 605, 609 (6th Cir. 2002).

The Commentary to § 3C1.1 provides a "non-exhaustive list" of examples of conduct which may result in an enhancement for obstruction of justice, including "committing, suborning, or attempting to suborn perjury," U.S. Sentencing Guidelines Manual § 3C1.1, cmt. n. 4(b) (2003), and "providing materially false information to a judge or magistrate," *id*., n. 4(f). The Commentary defines as "material" any "information that, if believed, would tend to influence or affect the issue under determination," *id*., n. 6. The Commentary also cautions that

[i]n applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice.

*Id.*, n. 2.

The district court in this case identified several areas of perjurious testimony by Cline, including:

Cline's statement under oath that he did not drive the car away, that [Marcum] drove the car and he was invited along with her ... that he went up the coal mine road to get away from Luther Smith when Luther returned ... [and] that he didn't want to have a further confrontation with him.

J.A. at 225-26. The district court explicitly found that these statements constituted "sufficient testimony in evidence to support [the enhancement for] obstruction of justice." J.A. at 227. Because "the jury had to disbelieve [Cline] entirely to convict him," J.A. at 225, the court found that the obstructive conduct was sufficiently related to the offense of conviction.

Cline challenges this finding by reference to *United States v. Tackett*, 193 F.3d 880, 886-87 (6th Cir. 1999), charging that *Tackett* requires a sentencing judge to specify particular elements of "substantial interference." Because *Tackett* addressed the proper procedure for sentencing under Guidelines § 2J1.2(b), which applies to convictions for perjury, rather than § 3C1.1, it is of little guidance here.

The facts at bar bear a closer likeness to *United States v. Paul*, 57 Fed. Appx. 597, 612, 2003 WL 173059, at *14 (6th Cir. 2003) and *United States v. Miller*, 45 Fed. Appx. 359, 364, 2002 WL 1894647, at *4-5 (6th Cir. 2002), in which this

Court upheld enhancements for obstruction based on similar perjurious testimony. The district court did not abuse its discretion in this case.

### 4. "Threat of Death" During the Carjacking

The most difficult question posed by Cline's appeal involves the propriety of an enhancement for making a threat of death during the carjacking, under § 2B3.1(b)(2)(F). Section 2B3.1 of the Guidelines allow enhancement "if a threat of death was made" during a robbery. U.S. SENTENCING GUIDELINES MANUAL § 2B3.1(b)(2)(F). Cline contends that "any threats were made after the taking of the vehicle had been accomplished." Appellant's Br. at 9.

As the district court correctly observed, a vote to convict necessarily implies that the jury believed Marcum's description of the events leading up to the apprehension of Cline by the police. Marcum's testimony was that she regained consciousness upon arrival at DeLong's trailer, "[a]nd we went in the house, and no one was there." J.A. at 177. Asked "what happened next," Marcum responded:

[Cline] punched me and knocked me over the kitchen table. And I got back up, and he punched me again. That's when he chipped my right front tooth. And then he told me that I had seen too much and [his] exact words were, "I've already killed Luther. You've seen too much. Now you are going to die, bitch."

*Id*. From this, it is clear that the threat of death in question[3] occurred after Cline and Marcum returned to DeLong's trailer and exited the purloined vehicle. Enhancement for this threat under § 2B3.1(b)(2)(F) would require a finding that it was made "during" the robbery/carjacking, *i.e.* that the act of

---

[3]The government does not seek to justify this enhancement based on any threats made to or regarding the owner of the vehicle, Luther Smith.

carjacking did not terminate when Cline and Marcum left the vehicle.

Determining the duration of a carjacking has proved a thorny task for the federal courts. In *United States v. Vazquez-Rivera*, 135 F.3d 172, 178 (1st Cir. 1998), the First Circuit acknowledged the "the not insubstantial problem of delineating the precise temporal limits of the crime of carjacking." And while that court opined that it "need not provide a comprehensive answer to this problem," it proceeded to uphold an enhancement for serious bodily injury where the defendant used a firearm first to obtain possession of the victim's car, and then "to intimidate her immediately prior to raping her." *Id*. Although the rape occurred outside of the vehicle, the court held that "the injuries covered are not limited to those resulting from the 'taking' of a vehicle, but also include those caused by the carjacker at any point during his or her retention of the vehicle." *Id*. (citing *United States v. Cruz*, 106 F.3d 1134, 1137 (3rd Cir. 1997) (holding that a woman raped during a carjacking was a "victim" of the carjacking for sentencing purposes; court may "look at all the conduct underlying the offense of the conviction")).

In *Ramirez-Burgos v. United States*, 313 F.3d 23, 30 n.9 (1st. Cir 2002), the First Circuit reaffirmed, "without hesitation, that the commission of a carjacking continues at least while the carjacker maintains control over the victim and her car." The court concluded that rape of the victim "resulted" from the carjacking, because "the rape, like the earlier brandishing of the gun, provided the intimidation by which the carjackers extended their control of the victim and the automobile." *Id*. at 30.

The First Circuit's decision to consider for purposes of sentencing all acts occurring during a defendant's control of the seized vehicle represents an effort to effectuate legislative

intent[4] and accords with that circuit's "interpretation of sentencing enhancement regimes generally." *Vazquez-Rivera*, 135 F.3d at 178. Courts have arrived at similar conclusions in measuring the duration of carjacking for purposes of *mens rea. See United States v. Lebron-Cepeda*, 324 F.3d 52, 62 (1st Cir. 2003)(Howard, J., concurring); *United States v. Jones*, 2003 U.S.Dist. LEXIS 9933 (E.D.Pa. 2003)(adopting reasoning of Howard, J., on the issue "of the length or definition of taking when there's an extended carjacking involving the continued presence of the victim.")

Similarly, the Ninth Circuit has reasoned that a carjacking continues until the victim is "permanently separated from her car." *United States v. Hicks*, 103 F.3d 837, 844 n.5 (9th Cir. 1996). The District Court of Puerto Rico has upheld an enhancement for serious bodily injury where a rape took place in an apartment, but the defendant "was still in full control of the carjacked vehicle, as he retained the keys to the car, had a victim in its trunk, and the owner under his command." *United States v. Gonzalez-Mercado*, 239 F.Supp.2d 148, 150 (D. P.R. 2002).

In accord with this well-supported approach, we do not find that the district court erred in applying the enhancement for Cline's threat of death. At the time of the threat, Cline had control over the victim of the carjacking, and had left for dead the owner of the vehicle. Although Marcum did not testify as to whether Cline retained the keys to the car, the district court was justified in finding that he had not permanently separated her from the vehicle. As with prior efforts to address this issue, we need not draw a precise line demarcating the termination of any and all carjackings. It will suffice to hold that the carjacking persisted at least until further dissipation of the indicia of Cline's control over the vehicle. We will not

---

[4] The opinion in *Vazquez-Rivera* cites the Anti Car Theft Act, Pub. L. No. 102-519, reprinted in 1992 U.S.C.A.A.N. 2847, at 1865. 135 F.3d at 178.

reach a different result merely because the arrival of police denied Cline the opportunity to flee in the stolen car (as in *Vazquez-Rivera*) or to return it to the victim (as in *Gonzalez-Mercado*).

### III. Conclusion

For the foregoing reasons, the decision of the district court is AFFIRMED in all respects.