**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0145n.06

Nos. 12-3229, 12-3230

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| ARRICO SPIRES, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| **Defendant-Appellant,** | ) | DIVISION OF OHIO |
| | ) | |
| and | ) | |
| | ) | **O P I N I O N** |
| JOSEPH WARE, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| _____ | ) | |

**FILED**
**Feb 08, 2013**
DEBORAH S. HUNT, Clerk

Before: MOORE, SUTTON, and DONALD, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** In 2011, various state and federal law-enforcement agencies joined forces to open a shop (named "Tredz") in Mansfield, Ohio. Agents outfitted Tredz with footwear, clothing, hidden security cameras, and undercover "employees." These employees purchased powder and crack cocaine from members of a conspiracy that included, among others, Arrico Spires ("Spires") and Joseph Ware ("Ware"). A federal jury convicted Spires on three counts relating to the drug conspiracy; he now raises three issues on his direct appeal. Ware pleaded guilty to five overlapping counts, and appeals two aspects of his sentencing. We **AFFIRM** the district court's judgments.

No. 12-3229, *United States v. Spires*
No. 12-3230, *United States v. Ware*

## I. SPIRES'S APPEAL

### A. Facts and Procedural History

Spires, Ware, Robert Harris III ("Harris"), and three others were indicted on multiple counts centering around a conspiracy to sell crack and powder cocaine. R. 1 (Indictment) (Page ID #1–30). A jury convicted Spires of three counts: conspiring to possess with intent to distribute and to distribute both crack and powder cocaine; distributing powder cocaine on or about January 6, 2011; and doing the same on or about January 11, 2011. R. 96-1 (Verdict) (Page ID #517–20); *see* 21 U.S.C. § 841(a)(1) (distribution and possession with intent to distribute); § 846 (conspiracy). At trial, the government argued that Spires acted as the principal supplier for the conspiracy. Ware and Harris each testified that Spires routinely provided them with cocaine, which they sold to Tredz employees. R. 134 (Trial Tr. at 302–12) (Page ID #1018–28) (Ware); (Trial Tr. at 368–72) (Page ID #1084–88) (Harris). A Tredz employee testified that Spires arranged a sale with him over the phone, and that Harris conducted the in-person exchange. R. 133 (Trial Tr. at 199–201) (Page ID #915–17). The government also provided cell phone records, which indicated that frequent calls to and by Spires occurred immediately before several drug transactions completed by his co-conspirators. R. 136-8 (Phone Rs.) (Page ID #1256–94).

With respect to the first of the two counts of distributing cocaine, on January 6, 2011, Ware and Spires waited outside Tredz for an employee to arrive. Both Ware and Spires entered the store, where the employee told Ware that he could afford to buy only one ounce of cocaine, but hoped that Ware could front him the second ounce. R. 133 (Trial Tr. at 129) (Page ID #845). Ware told the

2

employee he "needed to talk to his dude," *id.*, walked over and spoke with Spires, repeated the cycle of negotiating with the employee and speaking with Spires, and ultimately refused to sell the second ounce. *Id.* (Trial Tr. at 133–46) (Page ID #849–62). These interactions were videotaped.

With respect to the second of the two counts of distributing cocaine, on January 11, 2011, Ware told a Tredz employee that he had no cocaine to sell, after which he remained in the store and called Spires four times. R. 136-8 (Phone Rs. at 8) (Page ID #1263). Spires then arrived and handed Ware a white object. Ware immediately thereafter sold cocaine to an employee, and, in the parking lot, Ware handed Spires money obtained in the transaction. R. 133 (Trial Tr. at 152–55) (Page ID #868–71); R. 134 (Trial Tr. at 218–19) (Page ID #934–35). Again, these interactions were videotaped.

## B. Sufficiency of the Evidence

Spires argues that the evidence presented at trial was insufficient to support his conviction. "'When reviewing a claim of insufficient evidence, we examine the evidence in the light most favorable to the government and draw all inferences in the government's favor.'" *United States v. Gibbs*, 182 F.3d 408, 419 (6th Cir.) (quoting *United States v. Maliszewski*, 161 F.3d 992, 1005 (6th Cir. 1998)), *cert. denied*, 528 U.S. 1051 (1999). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "In order to show a [drug] conspiracy under § 846, the government must prove, beyond a reasonable doubt, '(1) an agreement to violate drug laws, (2)

3

knowledge and intent to join the conspiracy, and (3) participation in the conspiracy.'" *Gibbs*, 182 F.3d at 420 (quoting *United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996)). Spires argues that there was insufficient evidence of his participation in the conspiracy. However, both Ware and Harris testified to Spires's repeated involvement as a supplier for the conspiracy, as corroborated by phone records and surveillance tapes. Accordingly, viewing this evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that Spires participated in the conspiracy.

With respect to the separate counts of distribution, Spires argues that in neither instance was there evidence of possession. *See United States v. Mackey*, 265 F.3d 457, 460 (6th Cir. 2001) ("To establish a violation of § 841(a)(1), the government must prove the following elements: '(1) knowing (2) possession of a controlled substance (3) with intent to distribute.'" (quoting *United States v. Christian*, 786 F.2d 203, 210 (6th Cir.1986)), *cert. denied*, 534 U.S. 1097 (2002). His position would require that we ignore clear inferences to be drawn from the evidence discussed above. Specifically, regarding the events of January 6, an obvious inference from Ware's repeated traverses is that he discussed with Spires whether to front a second ounce of Spires's cocaine. Regarding the events of January 11, Spires's argument requires that we ignore video of Spires handing a white packet to Ware immediately before Ware executed a sale of cocaine. Viewing the evidence in favor of the prosecution, any rational trier of fact could have found beyond a reasonable doubt that Spires possessed cocaine on both of these dates.

## C. Prosecutorial Misconduct

Spires argues that the district court should have declared a mistrial over the government's questioning of a witness, which he argues rose to the level of prosecutorial misconduct. In establishing a foundation for two letters sent to Harris by Spires, *see* R. 136-6–7 (Letters) (Page ID #1248–53), the government sought to elicit the reaction of the witness—Harris's girlfriend, who first opened the letters—upon reading the letters, and further sought to elicit whether they made her reluctant to testify at trial. R. 134 (Trial Tr. at 262–71) (Page ID #978–87). Spires objected to these lines of inquiry, his objections were sustained, and the district court later convened a sidebar during which it briefly castigated the prosecutor pushing the line of inquiry. *Id*. at 271–73 (Page ID #987–89). Spires did not move for a mistrial or a curative instruction to the jury. Because no motion was presented to the district court, we review for plain error its decision not to declare sua sponte a mistrial. *See United States v. Mayberry*, 540 F.3d 506, 512 (6th Cir. 2008) ("When an appellant does fail to raise an issue in the court below, . . . [he] must demonstrate that '(1) an error occurred; (2) the error was obvious or clear; (3) the error affected his substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings.'" (quoting *United States v. Cline*, 362 F.3d 343, 348 (6th Cir. 2004)).

"When we review claims of prosecutorial misconduct, we determine whether the prosecutor's statements were both improper and flagrant." *United States v. Davis*, 514 F.3d 596, 613 (6th Cir.), *cert. denied*, 555 U.S. 835 (2008). We assess flagrancy according to four factors: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2)

whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong." *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001). An instance of improper, flagrant prosecutorial misconduct may rise to the level of plain error. *Davis*, 514 F.3d at 614. Moreover, even if an impropriety was not flagrant, "we will nonetheless reverse a conviction upon a determination that: 1) the proof of the defendant's guilt is not overwhelming; 2) the defense objected to the statements; and 3) the trial judge did not cure the impropriety through an admonishment to the jury." *United States v. Galloway*, 316 F.3d 624, 632 (6th Cir. 2003). That said, "[w]e will not overturn a verdict unless the prosecutorial misconduct is so pronounced and persistent that it permeate[d] the entire atmosphere of the trial, . . . or [was] so gross as probably to prejudice the defendant." *Davis*, 514 F.3d at 614 (internal quotation marks omitted).

The district court clearly believed that the implication behind the prosecutor's line of questioning was improper, as evidenced by the judge's sidebar comments. Assuming the line of questioning was improper, we conclude that it was not flagrant. The line of inquiry was isolated to a single witness who established a foundation for admitting letters sent by Spires. Although the line of inquiry was intentional—the government on appeal maintains that its inquiry was proper for similar reasons as those offered to the district court—the remarks did not tend to mislead the jury, largely because of the timely intervention by Spires's trial counsel and the district court. Most importantly, the evidence presented against Spires was overwhelming. Two co-conspirators testified against him, and one undercover employee testified to a specific sale organized by Spires. This

testimony was corroborated by both video evidence and cell phone records.  Accordingly, because the government's conduct was not flagrant, and because the evidence of Spires's guilt was overwhelming, we conclude that it was not plain error for the district court to refrain from declaring sua sponte a mistrial.

### D.  Improper Witness Testimony

Spires argues that the district court abused its discretion when it denied his motion for a mistrial based on an improper statement made by a government witness.  An undercover agent, in describing an interaction with Ware and another co-conspirator, testified that "Joe Ware's narcotics had come from Arrico Spires."  R. 134 (Trial Tr. at 428) (Page ID #1144).  The district court sustained Spires's objection and instructed the jury to disregard the statement; the court then denied Spires's motion for a mistrial, finding that its curative instruction was sufficient.  *Id*.

We review for abuse of discretion the denial of a motion for mistrial.  *United States v. Caver*, 470 F.3d 220, 243 (6th Cir. 2006), *cert. denied*, 470 U.S. 220 (2007).  In doing so, we evaluate the effect of improper statements according to five factors:  "'(1) whether the remark was unsolicited, (2) whether the government's line of questioning was reasonable, (3) whether a limiting instruction was immediate, clear, and forceful, (4) whether any bad faith was evidenced by the government, and (5) whether the remark was only a small part of the evidence against the defendant.'"  *Id*. (quoting *Zuern v. Tate*, 336 F.3d 478, 485 (6th Cir. 2003)).  Here, the offending statement was an unsolicited aside to testimony that was otherwise responsive to reasonable questioning.  The district court provided an immediate limiting instruction.  There was no evidence of bad faith by the prosecutor,

and the remark played at best a minor part in the evidence against Spires. Accordingly, the district court did not abuse its discretion in denying Spires's motion for a mistrial.

## II.  WARE'S APPEAL

Ware pleaded guilty to the following: participating in the conspiracy; knowingly possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); and possessing a firearm in violation of 18 U.S.C. § 922(g)(1) on three separate occasions. R. 87 (Plea Agreement) (Page ID #430–50). Ware challenges his Guidelines calculation, specifically that the district court assigned him four criminal history points for two prior convictions—one conviction for Involuntary Manslaughter and the other for Aggravated Robbery—that occurred on the same day and that were part of the same case. Ware appears to complain that the district court should have treated these two crimes as part of a single sentence. However, the district court did just that; it assigned Ware three points after treating the two convictions as a single sentence for Guidelines purposes, *see* U.S.S.G. § 4A1.2(a)(2), and then assigned an additional point for the uncounted sentence. *See* U.S.S.G. § 4A1.1(e). By contrast, had the district court assessed the convictions separately, Ware would have received six points under the Guidelines.

Ware also appeals the district court's decision to deny him the downward departure he sought at sentencing under U.S.S.G. § 4A1.3(b)(1), claiming that his criminal history level was overstated. The district court rejected Ware's argument. In general, we do "'not review a district court's decision not to depart downward unless the record shows that the district court was unaware of, or did not understand, its discretion to make such a departure.'" *United States v. Johnson*, 553 F.3d

990, 999 (6th Cir. 2009) (quoting *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008)).

Because the district court demonstrated that it understood its discretionary authority to depart downward in this case, we cannot review the decision to deny the departure.

### III.  CONCLUSION

For the reasons above, we **AFFIRM** Spires's conviction and Ware's sentence.