NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0079n.06

Case No. 13-3849

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 27, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| v. | ) | |
| | ) | |
| JAMAICA HEFLIN, | ) | |
| | ) | **OPINION** |
| Defendant-Appellant. | ) | |

BEFORE: **MERRITT, GIBBONS, and DONALD, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** Jamaica Heflin was convicted by a jury of two counts of possessing a controlled substance with intent to distribute. At trial, the government elicited testimony on cross-examination from a defense witness that (1) during the day before Heflin's arrest, the witness had driven around Toledo with Heflin and another man who owed Heflin money and who asked Heflin for heroin; and (2) the witness had dealt drugs with Heflin in the past. Heflin argues that the witness's testimony was inadmissible other acts evidence and that the district court wrongly denied him a limiting instruction. For the reasons set forth below, we affirm Heflin's convictions.

I.

In the early morning hours of June 9, 2011, Jamaica Heflin was stopped by police as a passenger in a red pickup truck at a 7-Eleven convenience store in Toledo, Ohio. Police searched the vehicle and its occupants and discovered a Glock .40 caliber handgun, $1,600 in

cash, 16.49 grams of heroin, and 7.33 grams of crack cocaine. According to several of the responding officers, the gun, cash, and drugs all were found on Heflin's person.

Heflin was indicted on four counts: (1) knowingly using and carrying a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); (2) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); (3) knowingly and intentionally possessing heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and (4) knowingly and intentionally possessing crack cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

At trial, the government called the responding officers to testify that Heflin had possessed the gun, cash, and drugs. The government also introduced testimony from a Toledo police sergeant who had interviewed Heflin in a holding cell shortly after Heflin's arrest. According to the sergeant, Heflin confessed that he had obtained the gun, the crack cocaine, and the heroin from a female earlier in the day and that he intended to sell the drugs the next day.

The sergeant further testified that based on his experience as a narcotics detective, the amount of heroin and crack cocaine that had been recovered was consistent with distribution, rather than personal use; a typical dose of heroin would be 0.1 to 0.2 grams, and a typical dose of crack cocaine would be 0.2 grams. Upon cross-examination, however, he acknowledged that at a party with several people, it was possible that they could use several grams of heroin or crack cocaine during the course of an evening.

In his defense, Heflin called three witnesses: a clerk from the 7-Eleven where the stop occurred, himself, and Jasun Westover, who had been another passenger in the truck. The 7-Eleven clerk testified at trial that she had seen the police officers pull the gun out from under the seat of the red pickup truck, not from Heflin's waistband as the officers said. The government

impeached her with her prior testimony, from a suppression hearing, that the first time she saw the drugs and the gun was when they were sitting on the hood of the red pickup truck after the officers placed them there.

Heflin took the stand to tell his version of events on the afternoon and evening of June 8–9, 2011. He testified that he had spent the afternoon at his mother's house until a woman named Kelsey called him to pick her up. Heflin did not have a ride, so he called Westover, who had a truck. They picked up Kelsey, who, according to Heflin, was carrying a large amount of cash because she had just robbed a drug dealer on the east side of Toledo. Heflin testified that Kelsey gave him $1,000 of the cash as a gift and that he already had another $600 in cash that he intended to put toward his mother's rent. The group then did drugs at a hotel, along with another woman who came to join them. Sometime after 1 a.m., according to Heflin, the group drove to Kelsey's sister's house to pick up swimsuits for the women so that they could go swimming at the hotel; they were on their way back to the hotel when they were pulled over. Heflin testified that the police found the gun in Westover's truck after Heflin had already been taken to the ground and searched; Heflin denied that he had ever seen the gun or had it in his possession. He also denied that the heroin and crack cocaine that the police recovered had come from his person. Heflin further claimed that the police had beaten and threatened him while he was detained in the holding cell, which did not have cameras.

Heflin also called Jasun Westover to the stand. On direct examination, Westover testified that during the day on June 8, he and Heflin had driven a man named Richard to various stores in the Toledo area so that Richard could "boost"—shoplift merchandise and then return it for money. (Heflin denied this during his own testimony.) Consistent with Heflin's testimony, Westover testified that the two men later picked up Kelsey, did drugs at a hotel along with

Kelsey and another woman, and left the hotel in the wee hours of the morning to get swimsuits for the women, after which they were pulled over at the 7-Eleven. Westover testified that the Glock handgun in question belonged to him—specifically, that he had purchased it from the same person from whom he had acquired the truck a month or two previously and that he kept it underneath the carpet under the passenger seat. Westover testified that he saw a police officer find the gun under the passenger seat, not on Heflin's person.

Westover's testimony on cross-examination gives rise to this appeal. Two separate groups of statements are at issue. First, the government asked Westover about his interactions with Richard in the hours before Westover and Heflin were arrested. The government asked Westover whether he and Heflin had "picked up a guy named Richard"; Westover said yes. The government asked Westover whether Richard owed Heflin money, and Westover replied, "I believe so. . . . I'm speculating on that's what I assume that he did—was owed him. I didn't ask him if he owed him money." The government asked whether Richard, upon being dropped off, had asked Heflin for heroin; Westover said yes. Finally, the government asked whether Heflin had actually given heroin to Richard; Westover said, "No, I don't recall. I don't believe so." Impeaching Westover, the government then played a recording of a statement Westover had previously given to investigators.

Second, the government asked Westover about his past drug dealing with Heflin:

Q:     And in the past you had sold drugs with Mr. Heflin; isn't that true?

A:     Yes, sir.

Q:     And he would split profits with you when you sold them; is that correct?

A:     Not necessarily split profits, but—

Q:     He would give you some of the money that he would make selling drugs, true?

A:       He had his drugs, I had my own.

The government then played another recording of Westover's prior statement, apparently for impeachment, and ended cross-examination.

In a sidebar conference, counsel then made the following statements:

[DEFENSE COUNSEL]: Since it was cross examination I didn't object under Rule 404 to that evidence coming in.  It's like evidence but earlier the day before.  It was not on the 2:00 a.m. of the night in question, so I would like an instruction that the jury cannot consider that as evidence of what happened that night.

[PROSECUTOR]: I think it's inextricably intertwined with what we have to prove which is possession with intent to distribute and within hours, probably less than 12 before the actual event in place.  There's evidence he was in possession of heroin and distributed and selling.

THE COURT: I agree.  I mean, I think it's clearly part of the sort of continuing course of events.  It also shows relationship between these two individuals, so overruled.

The jury acquitted Heflin of counts 1 and 2, the gun charges, but convicted him of counts 3 and 4, the drug charges.  Varying downward from the guideline range of 210 to 262 months, the district court sentenced Heflin to a term of 120 months on each count to be served concurrently.

Heflin timely appealed.[1]  Heflin makes two arguments as to why he should receive a new trial.  First, he argues that the court improperly allowed Westover's statements on cross-examination (discussed above) to be admitted as substantive evidence that Heflin possessed drugs with intent to distribute at the time of his arrest.  Second, Heflin argues that the court erred by not giving a limiting instruction to the jury as he requested.

II.

We first consider Heflin's argument that the district court erred in determining that Westover's statements on cross-examination constituted background evidence that did not

---

[1] After his conviction but before sentencing, Heflin filed *pro se* a premature notice of appeal, which this court dismissed for lack of jurisdiction.  Heflin later filed this timely appeal.

implicate Federal Rule of Evidence 404(b). Background evidence "consists of those other acts that are inextricably intertwined with the charged offense . . . ." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). Heflin contends that Westover's statements on cross-examination were not background evidence but rather were inadmissible other acts evidence under Rule 404.

When an objection is properly lodged to a district court's evidentiary ruling, the court of appeals typically reviews that ruling for an abuse of discretion. *United States v. Clay*, 667 F.3d 689, 693 (6th Cir. 2012) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997)). A district court's ruling that a piece of evidence is "intrinsic" to the charged offense, and therefore not subject to Rule 404(b) because it is not an "other act," falls within this rule and will be reviewed for abuse of discretion. *Flagg v. City of Detroit*, 715 F.3d 165, 175–76 (6th Cir. 2013); *see also United States v. Chalmers*, 554 F. App'x 440, 451 (6th Cir. 2014); *United States v. Toney*, 161 F.3d 404, 413–14 (6th Cir. 1998). When a criminal defendant fails to raise an argument in the district court, however, the court of appeals will review the district court's decision for plain error. *United States v. Mayberry*, 540 F.3d 506, 512 (6th Cir. 2008) (citing *United States v. Cline*, 362 F.3d 343, 348 (6th Cir. 2004)). Plain error means that "(1) an error occurred; (2) the error was obvious or clear; (3) the error affected [the appellant's] substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (internal quotation marks omitted).

As an initial matter, then, we must determine whether Heflin preserved his Rule 404(b) argument for appeal or whether it is subject to plain error review. Federal Rule of Evidence 103(a) specifies that a party's objection to a ruling admitting evidence is preserved only if the party "timely objects or moves to strike" and "states the specific ground, unless it was apparent

from the context." "[A] defendant must object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection." *United States v. LeBlanc*, 612 F.2d 1012, 1014 (6th Cir. 1980) (internal quotation marks omitted) (quoting *United States v. Fendley*, 522 F.2d 181, 186 (5th Cir. 1975)).

Without adopting a strained reading of Heflin's counsel's words at sidebar, we are unable to conclude that Heflin preserved his Rule 404(b) objection to Westover's testimony. Not only was Heflin's counsel's statement "loosely formulated and imprecise," *id.*, but to the extent that it was clear at all, Heflin's counsel specifically stated that he had *not* raised a Rule 404(b) objection (apparently on the mistaken belief that he could not do so for testimony elicited during cross-examination), and he did not ask that Westover's testimony be struck from the record. The only thing that Heflin's counsel did do was ask the court to instruct the jury not to consider Westover's testimony as substantive evidence of whether Heflin had possessed the drugs with intent to distribute. However, "[m]erely proposing a jury instruction is insufficient to preserve an objection." *United States v. Semrau*, 693 F.3d 510, 527 (6th Cir. 2012). Nor is Heflin's objection preserved by his prior suggestion, in a response to the government's pretrial motion in limine to bar Westover from testifying at all, that Westover's "activity the previous day is excludable under Rule 404 of the Federal Rules of Evidence." *See United States v. Kelly*, 204 F.3d 652, 655 (6th Cir. 2000) ("In the absence of a contemporaneous objection we must apply a 'plain error' standard of review . . . [because] a motion in limine does not preserve evidentiary questions for appeal."). Heflin's argument that the district court improperly concluded Westover's statements did not implicate Rule 404(b) is therefore subject to plain error review.

Looking first at Westover's statements about his and Heflin's interactions with Richard during the day before they were arrested, we do not find that the district court committed any

error, much less plain error, in finding that these statements were background evidence not subject to Rule 404(b). Although the background evidence exception "is not an open ended basis to admit any and all other act evidence the proponent wishes to introduce," *Hardy*, 228 F.3d at 748, it does cover Westover's statements about the day before the arrest. "Typically, [background] evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013) (quoting *Hardy*, 228 F.3d at 748). Westover's statements that Richard owed Heflin money and that Richard asked Heflin for heroin when they dropped Richard off (as well as his recorded statement, played for impeachment, that Heflin gave heroin to Richard) are both a prelude to and probative of the charged offense: they tend to show that Heflin possessed drugs and was dealing drugs only a short time before Heflin was arrested, while traveling in the same vehicle in which the police stopped him several hours later, while in the company of one of the same people who was with him when he was arrested. For the same reasons, Westover's testimony "has a causal, temporal or spatial connection with the charged offense." *United States v. Marrero*, 651 F.3d 453, 471 (6th Cir. 2011) (quoting *Hardy*, 228 F.3d at 748). The district court did not err in finding that Westover's testimony about the day before constituted "other acts" evidence that was "part of a single criminal episode," and therefore was background evidence outside the ambit of Rule 404(b). *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995).

Nor did the district court commit plain error in its apparent conclusion[2] that Westover's testimony about his past drug dealing with Heflin was admissible for another non-Rule 404 purpose: to show Westover's bias as a witness. Although the Federal Rules of Evidence do not explicitly address impeachment of a witness for bias, the Supreme Court has made clear that impeachment for bias is impliedly authorized—subject, of course, to the district court's assessment that the evidence is relevant, per Rule 401, and that its probative value is not substantially outweighed by the danger of unfair prejudice, per Rule 403. *United States v. Abel*, 469 U.S. 45, 50–54 (1984). This court's Rule 403 balancing decision in *United States v. Arnold*, 890 F.2d 825 (6th Cir. 1989), is instructive for the case at hand. In *Arnold*, the defendant was convicted of participation in a large conspiracy to distribute marijuana. *Id.* at 826. At trial, Arnold called an alibi witness named Lewellen. *Id.* at 827. The district court allowed the government to cross-examine Lewellen about a small drug transaction he had had with Arnold eighteen years previously, for the purpose of showing Lewellen's bias. *Id.* at 827–28. This court ruled that "[a]lthough it is a very close question and we might have reached a different conclusion, we do not believe the trial court abused its discretion in ruling that the government was entitled to explore prior drug dealings between the witness and the defendant on the issue of bias." *Id.* at 828.

Factually, *Arnold* is not on all fours with Heflin's case: among other things, the impeached witness only acknowledged a single drug deal with the defendant, farther in the past than the drug dealing by Heflin and Westover. *Id.* Nevertheless, it does hold that a defense witness for a drug-dealing defendant can, at least in some circumstances, be impeached for bias

---

[2] In rejecting Heflin's request for a limiting instruction, the court stated that Westover's testimony about his past drug dealing with Heflin "also shows relationship between these two individuals, so overruled."

by eliciting testimony on cross-examination that the witness previously was involved in a drug transaction with the defendant. *See id.* In light of *Arnold*, then, it cannot be said that the district court committed plain error in determining that Westover's testimony that he had previously dealt drugs with Heflin was admissible to show Westover's bias.

III.

We now turn to the district court's decision not to give a limiting instruction to the jury about Westover's testimony. This court reviews for abuse of discretion a district court's decision to deny a defendant's request for a jury instruction. *United States v. Dado*, 759 F.3d 550, 568 (6th Cir. 2014). "An abuse of discretion is deemed to exist when a reviewing court is 'firmly convinced that a mistake has been made' . . . or when a district court makes errors of law or clear errors of factual determination." *United States v. Smith*, 749 F.3d 465, 495 (6th Cir. 2014) (quoting *United States v. Whittington*, 455 F.3d 736, 738 (6th Cir. 2006)).

"If the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." Fed. R. Evid. 105. Heflin timely requested a limiting instruction under Rule 105: immediately after the government concluded its cross-examination of Westover, Heflin's counsel told the court in a sidebar conference that "I would like an instruction that the jury cannot consider that as evidence of what happened that night." Although Heflin's counsel's statement during the sidebar was not a model of clarity, it can fairly be understood as a request for a limiting instruction both with respect to Westover's statements about Heflin's activities with Richard ("It's like evidence but earlier the day before") and with respect to Westover's statements about his own prior drug dealing with Heflin ("It was not on the 2:00 am of the night in question").

"A district court's refusal to deliver a requested instruction is reversible error only if the proposed instruction is '(1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense.'" *Dado*, 759 F.3d at 568 (quoting *United States v. Franklin*, 415 F.3d 537, 553 (6th Cir. 2005)). Because, as discussed above, the district court did not err in concluding that Westover's testimony about his and Heflin's activities with Richard the day before was background evidence that went to the charged offense, Heflin was not entitled to a limiting instruction on that point: it was admissible for the purpose of determining whether Heflin had, in the wee hours of June 9, 2011, possessed drugs with intent to distribute. *See United States v. Martin*, 794 F.2d 1531, 1533 (11th Cir. 1986) (per curiam).

As for Westover's testimony that he and Heflin had dealt drugs at some point in the past, however, Heflin's requested jury instruction is a correct statement of the law. As discussed above, that evidence was admissible for the purpose of showing Westover's bias in favor of Heflin, but it was not admissible for the purpose of showing that Heflin was dealing drugs again on this occasion. *See* Fed. R. Evid. 404(b). Moreover, it was not covered by the charge that the district court delivered to the jury.

The remaining question is whether the court's failure to give Heflin's requested instruction substantially impaired Heflin's defense. We conclude that it did not. Only a small part of the admitted evidence—that relating to drug dealing at some time prior to the events immediately preceding Heflin's arrest—was arguably subject to a limiting instruction. We find it extremely doubtful that the jury singled out the part subject to a limiting instruction on which to base its verdict. Furthermore, a correct instruction would have had to draw the jury's attention to the distinction between the drug-dealing evidence that they could consider as substantive

evidence of Heflin's guilt and the drug-dealing evidence that they could only consider for impeachment of Westover's credibility, an emphasis that hardly seems helpful to Heflin.

## IV.

Heflin's convictions are, therefore, affirmed.